The equitable action of assumpsit for money had and received lies to recover money which has come to the hands of the defendant, which he ought not to retain, but which ex æquo etbono belongs to the plaintiff; and whether the recipient of the money be a natural or artificial person, an individual or body corporate, is not material. It is enough that the party sought to be charged is capable of suing and being sued. Corporations may be made liable in this action for moneys which, by the instrumentality of their officers and agents, have come to their use and possession, or been mingled with and become a part of their funds. Actions of tort for the redress of injuries, and especially all such actions as sound in damages and are not brought to recover specific real or personal property, or the avails of such property, appropriated by the corporation, should ordinarily be brought against the individual tort feasor. But actions for specific property or for money had and received should rightfully be brought against the person who has possession of the property, or who has received and detains the money, irrespective of the means or of the agency by which the claimant has been deprived of the possession of his property. The county treasurer was and is the fiscal agent of the county, as a body corporate, and receives and disburses, under the direction of the board of supervisors, all moneys belonging to it; and a receipt of money by him, to the use of the county, is a receipt by the *Page 62 
county in its corporate capacity. The county can only act in such matters by its treasurer, and the money paid into the county treasury becomes at once the money of the county, as money paid to a clerk or servant of a natural person, to the use of the master and mingled with his funds, becomes the property of the master, as between him and the clerk or servant. Money realized from taxes, levied and assessed by the board of supervisors without authority of law, and paid into the county treasury to the use of the county, and as a part of the county funds, to be employed for county purposes, is money had and received by the county to and for the use of the person whose money has been thus illegally taken from him. It equitably and honestly belongs to him, and unless a county is, by some law, exempt from the ordinary principles by which the liabilities of natural persons and other corporations are determined, an action will lie against it, as a corporation, for the recovery of such money. Municipal corporations are not exempt from the common law liability to refund moneys illegally levied or inequitably received, which attaches to other civil corporations and to individuals, by any statute, or for any reason connected with or growing out of their necessities or functions; and their liability, in such cases, is sustained by authority. (Torrey v. Inhabitants of Millbury,
21 Pick., 64; Joy v. Oxford, 3 Greenl. Rep., 131.) Seealso Inglee v. Bosworth (5 Pick., 498), as recognizing the general principle that an action will lie for money had and received to recover money illegally assessed or levied against the person or association for whose benefit it was collected.
A county is a body corporate and has capacity to sue and be sued in the manner prescribed by law; and all acts and proceedings by a county, in its corporate capacity, must be in the name of the board of supervisors. (1 R.S., 364, §§ 1, 3.) The board of supervisors represents and acts for the county, and is distinct from the several supervisors of the county composing it, as the House of Representatives, *Page 63 
acting by a legal quorum and under its proper organization as a recognized body, is distinct from the several representatives who compose the entire body and are individually merged in it. (1R.S., 366, §§ 1, 4, 5.) The board acts for the county by resolution, as an organized body, and the action of the individual supervisors, although unanimous, would not bind the county. (1 R.S., 364, § 4.)
Provision is made, by law, for legal proceedings in favor of and against counties, and it is enacted that in all such suits and proceedings the county shall sue in the name of the board of supervisors thereof, except when county officers shall be authorized, by law, to sue in their name of office, for the benefit of the county. (1 R.S., 384, §§ 1, 2.) The action is for or against the board of supervisors as an organized and recognized body having a chairman and clerk, and not for or against the individual supervisors whose individuality is merged in the body; and the exception in the act relates to actions authorized by law in favor of officers for the benefit of the county, but no exception is made affecting actions against or to enforce a liability of a county. The process is to be by summons, as against other corporations, and to be served, not upon the individual members, but upon the officers, the chairman or clerk. (1 R.S., 384, § 3; 2 R.S., 473, § 95.) The statute relied upon by the counsel for the appellants to sustain the position that the individual supervisors should have been named as defendants in the action (2 R.S., 473, § 92, et seq.), does not apply to the case. Sections 92 and 93 relate in terms to actions by public bodies and public officers, and not to actions against them, and section 96 to actions against public officers, as such, and not to actions against the bodies represented by them and the cases cited were all under these provisions and in favor of officers suing for the benefit of their towns. (Supervisor of Galway v. Stimson, 4 Hill, 136;Commissioners of Highways of Cortlandville v. Peck, 5 id.,
215.) The suit was properly brought therefore against the county in the *Page 64 
name of the board of supervisors, without naming the individuals who, for the time being, were supervisors of the several towns of the county.
The only remaining question is as to the legality of the tax which was levied and assessed upon the towns of Avon and Caledonia for the repair of the bridge in question. It is not necessary to determine whether the bridge, when it became public, became a charge upon the town or upon the county, although it would seem that it became a charge upon the towns of Caledonia and Avon, to be maintained at the joint and equal expense of each, there being no statute making this an exception, and taking it out of the general statutory regulations which devolve the care and maintenance of all roads and bridges upon the towns within which they are situated, and imposing the burthen upon the county. (Ch. 225 of Laws of 1841; People v. Board ofSupervisors of Dutchess County, 1 Hill, 50; 1 R.S., 501, etseq.) If the care of this bridge would be unreasonably onerous upon the towns, or required the raising of larger sums of money than by law can be raised annually for that purpose, relief must be sought from the legislature. But whether the bridge was a town or county charge, the tax was unauthorized and illegal. No county can levy a tax except in the cases and in the manner prescribed by law. The authority conferred for that purpose must be strictly pursued.
The commissioners of highways of the several towns are charged with the care and superintendence of the highways and bridges of their respective towns, and they are required to deliver to the supervisor of the town, to be by him laid before the board of supervisors, a statement of the improvements necessary to be made on the roads and bridges, together with the probable expense thereof, and the board of supervisors are required to cause the amount so estimated to be assessed, levied and collected on such towns in the same manner as other town charges, but the amount so to be raised is limited to two hundred and fifty dollars in any *Page 65 
one year. (1 R.S., 502, § 4.) Town charges are limited to sums directed by law to be raised for town purposes, by 1 R.S., 358, § 2. By ch. 314 of the Laws of 1838, § 1, subd. 5, the board of supervisors of each county is authorized to cause to be levied,c., such sum of money, in addition to the $250 before then allowed by law, not exceeding five hundred dollars in any one year, as a majority of the qualified voters of any town may, at any legal town meeting, have voted to be raised upon their town for constructing or repairing roads and bridges in such town. The board of supervisors can only assess and levy a tax upon a town, for the repair of roads and bridges within the town, to the amount of $250, upon the estimate and recommendation of the commissioners of highways, and to the amount of $500 in addition, upon the vote of a majority of the qualified voters of the town, and there is no claim that jurisdiction was given them in this case, either by the action of the commissioners of highways or of the voters of the town, and they had no right to act upon their own motion. If the town or its officers neglected a duty and omitted to construct or repair the necessary roads and bridges, the board of supervisors could not take their place and perform their duties, or by any act of theirs compel or expedite action on the part of the town officers. The remedy for the mischief was of an entirely different character. Viewing it as a town bridge, as distinguished from a county bridge, the board of supervisors had no authority to act, except in coöperation with the town and the proper town officers, and to decide what amount should be expended or in what manner the bridge should be rebuilt or repaired, and certainly not to proceed and make the repairs by their own agent, and impose a tax for the payment of the expense upon the towns. As well might they assume the entire care of all the roads and bridges in the county, dispensing with the services of the proper town officers, except in the *Page 66 
collection of the taxes which they might see fit to impose. (People v. Supervisors of Dutchess Co., supra.
If the bridge is considered as a county bridge and properly chargeable to it, the tax was equally unauthorized, as, being a tax upon only two towns; it was in effect charging them with its entire support and maintenance, thus shifting the burthen from the county to these two towns without authority of law.
The act of 1838, before cited, confers upon the board of supervisors power to cause to be levied, c., and paid to the treasurer of the county such sums of money as may be necessary to construct and repair bridges therein, and to prescribe upon what plan and in what manner the moneys so to be raised shall be expended, and to apportion the tax so to be raised among the several towns and wards of their county as shall seem to be equitable and just. An assessment of the entire tax upon one or two towns, thus making a bridge in fact a charge upon these towns instead of the county, cannot, in any just sense, be said to be an apportionment of the tax among the several towns of the county. A bare statement of the proposition, in my view, shows its absurdity so clearly as to render argument unnecessary. It can only be looked upon as an attempt to evade the statute for the benefit of the many at the expense of a few. The several towns, mean all the towns in the county; and to apportion among them, is to divide among the towns and allot or assign to each and every of them a just proportion. The levy of the tax was in any view entirely unauthorized and void, and as the amount paid by the plaintiff is found by the special verdict, he was entitled to recover it in this action. No question was made upon the trial, so far as appears, nor was any made upon the argument of this appeal, whether the payment, by the plaintiff, was voluntary in that sense, which would deprive him of a remedy by action, and therefore, although considered by *Page 67 
Judge Sill in his opinion in the supreme court, it is not considered here.
The judgment of the supreme court should be affirmed, with costs.
DENIO, J., was in favor of affirming the judgment.
RUGGLES, J., took no part in the decision.
Judgment reversed, and judgment rendered in favor of the defendants on the special verdict.